NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Philip BINNS,<br>    Plaintiff,<br><br>    v.<br><br>Loretta LYNCH, Attorney General, U.S. Department of Justice, AKAL SECURITY, INC.,<br><br>    Defendants. | Civil No. 16-03283(RBK)<br><br>**OPINION** |

**KUGLER**, United States District Judge:

**THIS MATTER** comes before the Court upon the Motion for Summary Judgment of Defendant Loretta Lynch, Attorney General of the United States of America ("the Government" or "USMS") [Doc. No. 33], seeking to dismiss Plaintiff Philip Binns' ("Plaintiff") Complaint. The United States Marshal Service ("USMS") requested that AKAL Security, Inc. ("AKAL") remove Plaintiff from the Court Security Contract between USMS and AKAL for failure to comply with contractual Performance Standards. AKAL employed Plaintiff as a Court Security Officer ("CSO"). Plaintiff alleges his removal from the Contract was racially motivated and therefore violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. For the reasons set forth below, the Government's motion for summary judgment is **GRANTED**.

I.     BACKGROUND

This is a case about alleged racial discrimination. Plaintiff is an African American and veteran of the United States Army. For more than twenty years, he worked for the Philadelphia Police Department and retired as a sergeant. Plaintiff's Deposition ("Plaintiff's Dep.") [Doc. No.

38-2] at 6. Then, after his retirement from the Police Department, Plaintiff became a CSO at the Philadelphia federal courthouse. Complaint [Doc. No. 1] at ¶ 15. He worked for AKAL, a court security contractor who contracted directly with USMS. CSO Offer Letter ("Offer Letter") [Doc. No. 33-9] at 1. On January 24, 2013, after an investigation showed Plaintiff had violated several Performance Standards within his 2011 Contract, AKAL removed him from the Contract. Letter from AKAL to Plaintiff [Doc. No. 33-34] at 1. Plaintiff's termination forms the basis of the underlying dispute.

### A. The USMS-AKAL Contract

On May 13, 2011, USMS awarded the Contract for CSOs at the Philadelphia federal courthouse to AKAL. Offer and Award [Doc. No. 33-3] at 1. The AKAL-USMS Contract required AKAL to provide "all necessary personnel, management, supervision, administrative support . . . to perform court security services for the USMS." AKAL-USMS Contract ("Contract") [Doc. No. 38-2] at C-2.[1] Under the Contract, CSOs and other AKAL personnel could not "represent themselves as USMS employees . . . ." *Id.* at C-27.

The Contract included Performance Standards for all CSOs. *Id.* at C-19–C-24. These Standards required that CSOs adhere to supervisor orders and fulfill all duties. Relatedly, CSOs may not unilaterally leave posts or assignments. Letter from USMS to AKAL [Doc. No. 33-6] at 1. Under the Contract, the violation of one or more Performance Standards could result in USMS requesting that AKAL remove a CSO from the Contract. Contract at H-2–H-3. As part of his hiring process with AKAL, Plaintiff certified that he had read and received a copy of

---

[1] Parties attached portions of the AKAL-USMS Contract in multiple files. This piecemeal attachment has resulted in the Court citing the contract in different ways. The Court simply notes that the sections of the Contract are available at Doc. Nos. 38-2, 33-5, and 33-7.

Performance Standards for CSOs as outlined in the Contract. Certification of CSO Performance Standards [Doc. No. 33-16] at 1.

## B. Plaintiff's Employment and Termination

Plaintiff's employment history with AKAL shows two instances of disciplinary action. First, in April 2010, AKAL found that Plaintiff had engaged in unprofessional behavior toward demonstrators outside the courthouse. Second, in April 2012, AKAL determined that Plaintiff violated a Performance Standard for making a phone call during work hours. Plaintiff's Dep. at 231; AKAL Summary of Investigation [Doc No. 33-24] at 1.

In December 2012, AKAL instituted an investigation to explore suspected employee misconduct. Defendant's Motion for Summary Judgment ("Def. Motion") [Doc. No. 33] at 11. This investigation came at USMS's direction. *Id.* Courthouse video evidence showed violations of Performance Standards, namely that Plaintiff spent time in courthouse rooms when he was supposed to be on his post. Letter from USMS to AKAL [Doc. No. 33-6] at 1. AKAL's investigation established a pattern of Plaintiff using courthouse rooms to make phone calls. AKAL Summary of Investigation Report [Doc. No. 33-25] at 1–3. AKAL forwarded these findings to USMS. *Id.* Joseph Morales, Assistant Chief of the Training and Compliance Branch at the USMS Office of Court Security, subsequently determined that Plaintiff should be removed from the Contract for violation of CSO Performance Standards. Letter from AKAL Contract Manager to USMS Contracting Officer [Doc. No. 33-26] at 1; EEOC Hearing Transcript [Doc. No. 33-2] at 267–69. On January 24, 2013, AKAL affirmed Plaintiff's removal from the Contract and terminated his employment. Letter from AKAL to Plaintiff [Doc. No. 33-34] at 1.

After his termination, Plaintiff filed a timely Equal Employment Opportunity ("EEO") complaint against the Department of Justice ("DOJ"). Plaintiff then requested a hearing with the

Equal Employment Opportunity Commission. EEOC Decision [Doc. No. 38-2] at 1. Administrative Judge Monique Cioffalo issued a decision on February 19, 2016. *Id.* This decision concluded that Plaintiff "failed to prove that his race played any role in this sequence of events" and held that the DOJ presented legitimate reasons for Plaintiff's removal from the Contract. *Id.* at 11, 13. The EEOC filed the final Order and Notice of Right to Sue in federal court on March 29, 2016. Complaint at ¶ 184.

Plaintiff filed his timely Complaint in this Court on June 22, 2016. *Id.* at ¶ 187. There, Plaintiff alleged that he suffered disparate treatment at the hands of the USMS, and that his termination was racially motivated. *Id.* at ¶¶ 196–97. The Government then filed the instant motion for summary judgment on May 11, 2018.

The Government now argues that USMS is not an employer of CSOs for Title VII purposes, and thus cannot be held liable under Title VII. Def. Motion at 16. In the alternative, the Government argues that there is no evidence to support Plaintiff's contention that the decision to remove Plaintiff from the Contract was motivated in whole or in part by Plaintiff's race. *Id.*

## II. LEGAL STANDARD

### A. Summary Judgment

The Court should grant a motion for summary judgment when the moving party "shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "material" to the dispute if it could alter the outcome, and a dispute of a material fact is "genuine" if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Matsushita Electric*

*Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'") (quoting *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 289 (1968)).  In deciding whether there is any genuine issue for trial, the court is not to weigh evidence or decide issues of fact.  *Anderson*, 477 U.S. at 248.  Because fact and credibility determinations are for the jury, the non-moving party's evidence is to be believed and ambiguities construed in its favor.  *Id.* at 255; *Matsushita*, 475 U.S. at 587.

Although the movant bears the burden of demonstrating that there is no genuine issue of material fact, the non-movant likewise must present more than mere allegations or denials to successfully oppose summary judgment.  *Anderson*, 477 U.S. at 256.  The nonmoving party must at least present probative evidence from which the jury might return a verdict in his favor.  *Id.* at 257.  The movant is entitled to summary judgment where the non-moving party fails to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.

### B.  Title VII, Civil Rights Act of 1964

Title VII protects federal employees "in executive agencies . . . from any discrimination based on race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-16.  An "employee" is defined as "an individual employed by an employer . . . ."  42 U.S.C. § 2000e(f).  In the Third Circuit, the common law test described in *Nationwide Mutual Insurance Co. v. Darden* determines whether an entity is an "employer" under Title VII.  503 U.S. 318, 323–24 (1992); *see also Faush v. Tuesday Morning, Inc.*, 808 F.3d 208, 213 (3d Cir. 2015) (applying the *Darden* test in Title VII cases).

"In determining whether a hired party is an employee under the general common law of agency, we consider the hiring party's right to control the manner and means by which the product is accomplished." *Darden*, 503 U.S. at 323 (quoting *Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 751 (1989)) (internal quotations omitted). The non-exhaustive list of relevant factors comprising the *Darden* test include:

> [T]he skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

*Id.* at 323–24 (quoting *Reid*, 490 U.S. at 751–52). The Third Circuit generally focuses on "which entity paid the employees' salaries, hired and fired them, and had control over their daily employment activities.'" *Faush*, 808 F.3d at 214 (internal quotation marks and alteration omitted). Nonetheless, "'all of the incidents of the relationship must be assessed and weighed with no one factor being decisive.'" *Id.* (quoting *Darden*, 503 U.S. at 324).

The Third Circuit also employs a joint employer test in Title VII cases. That test recognizes that two entities may be liable as joint employers for purposes of Title VII where "two entities exercise significant control over the same employees." *Graves v. Lowery*, 117 F.3d 723, 727 (3d Cir. 1997); *Faush*, 808 F.3d at 215. Under *Darden*, more than one entity may satisfy the test such that there is more than one employer liable under Title VII. *Faush*, 808 F.3d at 215 (emphasis in original). Therefore, the *Darden* factors apply to Title VII cases when determining whether an entity is a single *or* a joint employer. *Id.* at 213. Relatedly, if a plaintiff cannot establish that an entity is a sole employer under the *Darden* test, that entity cannot be a joint employer in the alternative. *Id.*

## III. DISCUSSION

### A. USMS' Status as Employer under *Darden*

The central issue before the Court is if USMS is Plaintiff's employer. The Government alleges that AKAL is Plaintiff's sole employer and therefore USMS cannot be liable for any violation of Title VII. Def. Motion at 19. Plaintiff, however, argues that USMS is Plaintiff's joint employer along with AKAL, and therefore the Government is liable under Title VII. Plaintiff's Opposition to Defendant's Motion for Summary Judgment [Doc. 38] ("Opposition Memo") at 2.

The Third Circuit applies the *Darden* factors in determining whether or not an entity acted as a plaintiff's employer. *Faush*, 808 F.3d at 214. As summarized in *Faush*, the Third Circuit's focus in *Darden* analysis is on "which entity paid [the employees'] salaries, hired and fired them, and had control over their daily employment activities," though other factors may be weighed, including which entity provided employee benefits and the entity identified as the employer for purposes of taxation. *Id.*

This Court's application of the *Darden* factors clearly shows USMS was not Plaintiff's employer. USMS did not issue Plaintiff's paychecks. Plaintiff's Dep. at 346. Likewise, USMS did not set Plaintiff's work schedule, nor did USMS play a role in daily supervision or assignment of tasks. *Id.* at 347–48, 356–57. The matter of hiring and firing, while apparently more complex, also weighs against finding USMS to be Plaintiff's employer. As Plaintiff alleges, USMS dictated the qualifications required of candidates for CSO positions and the Performance Standards successful candidates must meet in fulfilling their duties. Contract at C-17–C-24. The Contract also gave USMS authority to direct the removal of a CSO from the Contract for violation of Performance Standards. *Id.* at C-19. This power of direct removal,

however, did not dictate the removal of the Plaintiff—or any other employee failing to meet Performance Standards—from his position of employment with AKAL. Morales Affidavit [Doc. No. 38-3] at 3. Per the Contract, removal from one contract did not preclude AKAL from transferring an employee to another client's contract. *Id*. USMS thus lacked the authority to fire Plaintiff, and the ultimate decision not to transfer Plaintiff to another contract was solely within AKAL's control. *Id*.

Other *Darden* factors affirm our determination that USMS is not Plaintiff's employer. Plaintiff did not apply to USMS for employment or sign an offer of employment from USMS. Offer Letter at 1; Plaintiff's Dep. at 324, 326–28, 330–32. Plaintiff did not direct questions regarding duties and job performance to USMS employees. Plaintiff's Dep. at 343–44. Plaintiff did not receive employee benefits from USMS. *Id.* at 345–46. USMS was never identified as Plaintiff's employer for tax purposes. *Id.* at 346–47. Above all, per the AKAL-USMS Contract, Plaintiff and all other CSOs were prohibited from representing themselves to be employees of the USMS. Contract at C-55. Thus, under the *Darden* test, USMS was not Plaintiff's employer.

The Third Circuit's recent decision in *Urgent v. U.S. Marshals Service* affirms our analysis. *Urgent* determined that, under *Darden*, CSOs are not government employees. 704 Fed. App'x 107, 110 (3d Cir. 2017). Because CSOs are not government employees, they may not bring claims against USMS under section 2000e-16 of Title VII. *Id.* The Court in *Urgent* determined that because USMS did not pay CSOs' salaries and did not undertake daily supervision of CSOs, the contractor was the Plaintiff's sole employer for purposes of Title VII. *Id.* The fact that USMS established employment standards for CSOs and retained the ability to remove CSOs from the contract if they failed to meet those standards was "insufficient to ground a reasonable inference that the Marshals exercised daily or routine supervision over the CSOs."

*Id.* at 110 n.5–6. While the *Urgent* Court's holding is not dispositive here, it is strongly indicative of the Third Circuit's interpretation of "employer" in contractor CSO Title VII suits.

### B. USMS' Status as Joint Employer

Plaintiff next argues that USMS is in fact a joint employer with AKAL. Opposition Memo at 2. The Government, however, asserts that *Urgent*, in employing the *Darden* test to establish that USMS cannot be an employer of CSOs, squarely resolves this secondary argument. Def. Motion at 19, 22. Plaintiff counters that the correct test for a joint employer in the Title VII context is the test outlined in *NLRB v. Browning-Ferris Industries of Pennsylvania, Inc.*. 691 F.2d 1117, 1121 (3d Cir. 1982); Opposition Memo at 3, 8–9. In so arguing, Plaintiff asserts that the *Browning-Ferris* and *Darden* standards are substantially different. Opposition Memo at 3.

This Court finds Plaintiff's argument unpersuasive. Most obviously, Plaintiff ignores *Faush*, which is the Third Circuit's most recent precedential case on Title VII joint employers. In *Faush*, the Third Circuit clarified that evaluation of both sole and joint employers in Title VII cases proceeds under the *Darden* test. 808 F.3d at 213. There, the Court applied the *Darden* factors and found that USMS was not Plaintiff's joint employer with AKAL. *Id*. The *Faush* court also declined to adopt the joint employer standard articulated in *In re Enterprise Rent-A-Car Wage & Hour Employment Practices Litigation*. *Faush*, 808 F.3d at 213–14; *Enterprise*, 683 F.3d 462, 468 (3d Cir. 2012). And in reviewing this argument again, this Court finds that that *Enterprise* joint employer standard is merely a restatement of the standard described in *Browning-Ferris*. *Enterprise*, 683 F.3d at 468 (3d Cir. 2012). Plaintiff simply misinterprets the cases that he relies upon. As the *Faush* court made clear: *Darden* and *Enterprise*/*Browning-*

*Ferris* standards are functionally identical but doctrinally distinct, as the former applies to Title VII cases while the latter does not.[2]  808 F.3d at 213.

This Court follows Third Circuit precedent on the appropriate standard for evaluating joint employers in Title VII cases, and therefore applies *Darden* factors as required by the holding in *Faush*.  The functional similarity—or, as Plaintiff argues, dissimilarity—of the *Darden* and *Browning-Ferris* standards is irrelevant.  *Darden* governs here, including in the joint employer context.  Because, as described above, the Government cannot be called a sole employer in the Title VII context under *Darden*, the Government likewise cannot be a joint employer with AKAL.

## IV. CONCLUSION

Because Plaintiff was not an employee of the USMS, the Government is not subject to Title VII liability pursuant to 42 U.S.C. § 2000e-16. Accordingly, this Court will not reach the merits of Plaintiff's discrimination claim and **GRANTS** the Government's motion for summary judgment.

Dated: 6/17/2019                                                                              s/ Robert B. Kugler

                                                                                      ROBERT B. KUGLER

                                                                     United States District Judge

---

[2] The *Faush* court argued that, as in the Employee Retirement Income Security Act ("ERISA") at issue in *Darden*, the definition of "employee" in Title VII is "is completely circular and explains nothing."  808 F.3d at 213 (original quotations omitted).  The *Faush* court then distinguished this circular definition of "employee" from the much more nuanced definitions of "employee" under the Fair Labor Standards Act ("FLSA") and the National Labor Relations Act ("NLRA") (the statutes at issue in *Enterprise* and *Browning-Ferris*, respectively).  *Id.* at 214 ("Accordingly, the 'textual asymmetry' between Title VII and the FLSA 'precludes reliance on FLSA cases.'") (quoting *Darden*, 503 U.S. at 326).